AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 1:19-SW-881
Digital mobile devices indentified in attachment A, which )
are in custody of the Federal Bureau of Investigation in )
Manassas, Virginia )

FILED JUN 14 2019 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A

located in the _____Eastern_____ District of _____Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252(a)(1) and (b)(1) | Transportation of visual depictions of minor engaged in sexually explicit conduct |
| 18 U.S.C. §§ 2252 (a)(2) and | Receipt and distribution of visual depictions of minors engaged in sexually explicit |

The application is based on these facts:

See the attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ted. P. Delacourt, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/14/19

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
*Judge's signature*

City and state: Alexandria, Virginia

Honorable Theresa C. Buchanan, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

This warrant applies to digital mobile devices seized from NADER on June 3, 2019 (hereinafter, "SUBJECT PHONES"), specifically:

a. iPhone SE Model A1662 with IMEI 353793083094157

b. iPhone X Model MQAG2AE/A with serial number DNPVK3U3JCL9

c. iPhone Model MGCU2LL/A with serial number F2LNK2F7G5QL

d. Huawei phone Model LYA-L29

The SUBJECT PHONES are currently in the custody of the Federal Bureau of Investigation at its Northern Virginia Resident Agency, 9325 Discovery Boulevard, Manassas, Virginia 20109.

## ATTACHMENT B

## ITEMS TO BE SEIZED

All information that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 2252 and 2252A including information pertaining to the following matters:

    a.    Child pornography and child erotica;

    b.    Evidence of who transported, uploaded, downloaded, created, modified, deleted, accessed, possessed, viewed, owned, controlled, shared, or otherwise used the SUBJECT PHONES;

    c.    Evidence of when and under what circumstances the SUBJECT PHONES were transported, uploaded, downloaded, created, modified, deleted, accessed, possessed, viewed, owned, controlled, shared, or otherwise used; and

    d.    Evidence relating to the mental state of those who may have transported, uploaded, downloaded, created, modified, deleted, accessed, possessed, viewed, owned, controlled, shared, or otherwise used the SUBJECT PHONES as it relates to the crimes under investigation.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

IN RE SEARCH OF:

DIGITAL MOBILE DEVICES IDENTIFIED
IN ATTACHMENT A, WHICH ARE IN
CUSTODY OF THE FEDERAL BUREAU
OF INVESTIGATION IN MANASSAS,
VIRGINIA

Case No. 1:19-SW-881

**UNDER SEAL**

FILED JUN 14 2019 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Ted P. Delacourt, a Special Agent with the Federal Bureau of Investigation (FBI), Washington Field Division, Washington, D.C., being duly sworn, depose and state as follows:

### INTRODUCTION

1. Your Affiant has been employed by the FBI since September of 2004, and as a Special Agent since September 2005. Since 2005, I have received training and experience in interviewing and interrogation techniques, and arrest and search procedures. I was assigned as a Special Agent in the Jacksonville Division in January 2006, where I worked counterterrorism and intelligence-gathering operations for approximately three years. I was assigned to the Washington Field Office in May 2009 and charged with investigating international corruption, specifically violations of the Foreign Corrupt Practices Act (FCPA), as well as antitrust violations. In January 2009, I was promoted to Supervisory Special Agent and assigned to the Counterterrorism Division of FBI Headquarters, specifically to the National Joint Terrorism Task Force. In August 2012, I transferred within the Counterterrorism Division to the International Operations Section I, Continental U.S. Unit V, where I managed International Terrorism

1

investigations in the Phoenix Division. I am currently assigned to the Washington Field Office, Northern Virginia Resident Agency, Child Exploitation Task Force. Since joining the FBI, I have investigated violations of federal law. As a federal agent, I am authorized to investigate violation of laws of the United States, and as a law enforcement officer, I am authorized to execute warrants issued under the authority of the United States. Since September 2014, I have been assigned to investigate violations of law concerning the sexual exploitation of children, including child pornography and child sex trafficking. I have gained experience through both formal and on-the-job training in conducting these types of investigations.

2. I am familiar with the information contained in this Affidavit based upon the investigation I have conducted, which included conversations with law enforcement officers and others and review of reports and database records.

3. I make this Affidavit in support of an application for a search warrant for the digital mobile devices ("SUBJECT PHONES") specified in ATTACHMENT A, which were seized by the FBI from the possession of GEORGE AREF NADER ("NADER") on June 3, 2019 at the time NADER was arrested in the Secondary Inspection Area of Customs and Boarder Protection after clearing customs and immigration at John F. Kennedy International Airport in Queens, New York, upon his arrival from a flight that departed Dubai, United Arab Emirates.

4. NADER was apprehended pursuant to an arrest warrant issued by the Honorable John F. Anderson, United States Magistrate Judge for the Eastern District of Virginia, in case no.1:18-MJ-196.

5. The SUBJECT PHONES are currently within the custody of the FBI at its Northern Virginia Resident Agency, 9325 Discovery Boulevard, Manassas, Virginia 20109.

2

6. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that certain violations of 18 U.S.C. §§ 2252 and 2252A have been committed by someone utilizing the SUBJECT PHONES. As set forth more fully below, the FBI has reason to believe that the person who committed these violations was GEORGE AREF NADER of Washington, D.C.

7. The statements in this Affidavit are based upon information that I obtained during this investigation, either through direct observation, review of evidence or records, or communications with witnesses or fellow law enforcement personnel. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the SUBJECT PHONES constitute or contain contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2252(a)(1) and (b)(1) (transportation of visual depictions of minors engaged in sexually explicit conduct); 2252(a)(2) and (b)(1) (receipt and distribution of visual depictions of minors engaged in sexually explicit conduct); 2252(a)(4)(B) and (b)(2) (possession of and access with intent to view a visual depiction of a minor engaged in sexually explicit conduct); 2252A(a)(1) and (b)(1) (transportation of child pornography); 2252A(a)(2)(A) and (b)(1) (distribution and receipt of child pornography); and 2252A(a)(5)(B) and (b)(2) (possession of and access with intent to view child pornography).

## STATUTORY AUTHORITY

6. Title 18, United States Code, Section 2252(a)(1) and (b)(1) prohibits the knowing transportation or shipment of any visual depiction of minors engaging in sexually explicit

3

conduct using any means or facility of interstate or foreign commerce or in or affecting interstate commerce by any means, including by computer.

7. Title 18, United States Code, Section 2252(a)(2) and (b)(1) prohibits the knowing receipt or distribution of any visual depiction of minors engaging in sexually explicit conduct that has been mailed or shipped or transported in or affecting interstate or foreign commerce, by any means, including by computer.

8. Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2) prohibits the possession of one or more books, magazines, periodicals, films, or other materials which contain any visual depictions of minors engaged in sexually explicit conduct that have been transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or that were produced using materials that had traveled in interstate or foreign commerce, by any means, including by computer.

9. Title 18, United States Code, Section 2252A(a)(1) and (b)(1) prohibits the knowing mailing, or transportation or shipment using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, of any child pornography.

10. Title 18, United States Code, Section 2252A(a)(2) and (b)(1) prohibits the knowing receipt or distribution of any child pornography that has been mailed or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer.

11. Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2) prohibits the knowing possession of any book, magazine, periodical, film, videotape, computer disk, or other

4

material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

12. The following definitions apply to this Affidavit and its Attachments:

    a. "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

    b. "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors in sexually explicit poses or positions.

    c. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

5

d.  "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1).

e.  "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

f.  "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

g.  "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

h.  "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

      i.      "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

      j.      "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

### BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS, THE INTERNET, AND EMAIL

13.    I have had training in the investigation of computer-related crimes and I have consulted more senior law enforcement agents on this matter. Based on my training, experience, and knowledge, I know the following:

      a.      Computers and digital technology have dramatically changed the way in which individuals interested in child pornography interact with each other. Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage. Smartphones now typically serve many of the same functions as computers and can, therefore, be used to facilitate the production, distribution, and storage of child pornography, as well as communication about that topic.

7

  b.  Child pornographers can now transfer printed photographs into a computer-readable format with a device known as a scanner. Furthermore, with the advent of digital cameras and smartphones with cameras, when the photograph is taken it is saved as a digital file that can be directly transferred to a computer by simply connecting the camera or smartphone to the computer. In the last ten years, the resolution of pictures taken by digital cameras and smartphones has increased dramatically, meaning that such pictures have become sharper and crisper. Photos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone. These memory cards often store up to 32 gigabytes of data, which provides enough space to store thousands of high-resolution photographs. Video camcorders, which once recorded video onto tapes or mini-CDs, now can save video footage in a digital format directly to a hard drive in the camera. The video files can be easily transferred from the camcorder to a computer. Smartphones now typically have the ability to serve the same function as computers, and often store video and other images.

  c.  A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world. The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography. Child pornography can be transferred via electronic mail or through file transfer protocols (FTPs) to anyone with access to a computer and

modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (*i.e.*, "instant messaging"), cloud storage, and easy access to the Internet, the computer is a preferred method of distribution and receipt of child pornographic materials.

        d.     The Internet affords individuals numerous venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

        e.     Individuals also use online resources to trade, distribute, store, and retrieve child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet.

## HISTORY OF NADER'S SEXUAL INTEREST IN CHILDREN

8.     On February 27, 1991, NADER was indicted in the Eastern District of Virginia for violations related to smuggling child pornography, Title 18, United States Code, Section 2252(a)(1), by a federal grand jury. The indictment resulted from a seizure of child pornography at the Washington-Dulles International Airport on July 26, 1990 of two reels of video tape concealed in candy tins. On May 6, 1991, NADER pleaded guilty to a single count of Title 18, Section 2252(a)(1) (transportation of child pornography).

9.     U.S. law enforcement has further obtained official records from Czech authorities indicating that, in April 2002, NADER was arrested by law enforcement in the Czech Republic in connection to allegations that he had sex with minor boys in the Czech Republic from around

1999 through 2002. Records from the Czech Republic indicate that, on May 5, 2003, NADER was convicted at trial for Sexual Molestation of Children in the Municipal Court of Prague in the Czech Republic.

10. One of the minor victims identified by Czech law enforcement prior to NADER's trial was a person who is referenced herein as "J.B." who was allegedly sexually abused by NADER when NADER was in the Czech Republic.

11. During a series of interviews with U.S. law enforcement, J.B. subsequently disclosed that he had been transported to the United States when he was fourteen; that Nader arranged for J.B. to obtain a visa to the United States; and that after J.B.'s arrival in the United States, NADER engaged J.B. in sexual acts.

12. J.B.'s recollection of his transportation to the United States by NADER is corroborated by U.S. Customs and Border Protection arrival/departure records, indicating that, on February 6, 2000, a Czech citizen named J.B., with J.B.'s date of birth, using a Czech Passport with Czech Passport Number 10081154, arrived on Lufthansa Flight 418 from Frankfurt, Germany to Washington-Dulles.

13. As disclosed to law enforcement by J.B., while J.B. remained in Washington, D.C., NADER provided between $30 and $100 of spending money each day, depending on the planned activities. J.B. told law enforcement that, while staying in NADER's residence, he saw two dresser drawers full of photos of naked boys between the ages of 15 and 17 years old.

14. Law enforcement recently obtained content from digital devices and online accounts, pursuant to search warrants issued in the Eastern District of Virginia, specifically 1:18-SW-154, which was issued on March 16, 2018; 1:18-SW-181, which was issued on April 3,

10

2018; 1:19-SW-93, which was issued on February 13, 2019; and 1:19-SW-305, which was issued on April 12, 2019. The content includes emails and text messages between NADER and another person who, through victims' statements and travel records, law enforcement believes has had sex with a number of minor victims both in the United States and in the Czech Republic during the course of the last 30 years. In these exchanges, some dated as recently as September 2016, NADER and the other person appear to reference how to trade child pornography on various online platforms and hide one's digital trail. In other exchanges that were dated as recently as November 2012, NADER and the other person traded cloud storage links to files whose filenames were indicative of child pornography.

### APRIL 2018 CRIMINAL COMPLAINT AND JUNE 2019 ARREST

15. The United States charged NADER by complaint in April 2018 for transporting videos containing sexually explicit conduct depicting minors on an iPhone in his possession when he traveled to the United States in January 2018, in violation Title 18, United States Code, Section 2252(a)(1) and (b)(1). *See United States v. George Aref Nader*, 1:18-mj-196 (E.D. Va. 2018), dkt. 1-2. The Honorable John F. Anderson also issued an arrest warrant for NADER at the time charges were filed. *Id.* dkt. 7.

16. On March 24, 2018, NADER departed Washington-Dulles International Airport in Dulles, Virginia, for Dubai, on a direct flight aboard Emirates Airlines Flight 232 destined for the United Arab Emirates. For the period March 24, 2018 through June 2, 2019, NADER did not return to the United States or its territories.

11

17. On June 3, 2019 NADER boarded Emirates Flight 203, a direct flight from Dubai, United Arab Emirates, to the United States. The same day, he landed at John F. Kennedy International Airport, located in Queens, New York, within the Eastern District of New York.

18. On June 3, 2019, NADER was identified by officers of U.S. Customs and Border Protection when NADER presented his U.S. passport for inspection after he exited the aircraft. After being cleared through customs and immigration, NADER was arrested by agents of the FBI while NADER was in the Secondary Inspection Area of Customs and Boarder Protection at the airport. At that time, while still in the Secondary Inspection Area of Customs and Boarder Protection, agents of the FBI seized NADER's baggage and personal belongings incident to his arrest. An inventory search of NADER's belongings was conducted after NADER was presented for his Initial Appearance and Detention Hearing in the Eastern District of New York.

19. At the time of arrest, NADER was in possession of the SUBJECT PHONES, further identified as follows:

    a. iPhone SE Model A1662 with IMEI 353793083094157

    b. iPhone X Model MQAG2AE/A with serial number DNPVK3U3JCL9

    c. iPhone Model MGCU2LL/A with serial number F2LNK2F7G5QL

    d. Huawei phone Model LYA-L29

The phones are in the custody of the FBI's Northern Virginia Resident Agency in Manassas, Virginia.

20. In addition to the phones described above, NADER was in possession of the following items:

    a. U.S. passport #505987321 in the name of George Nader

    b. Washington, D.C. Driver's License in the name of George Aref Nader

    c. United Arab Emirates Identity Card in the name of George Aref Nader

    d. Emirates Flight 203 boarding pass in the name of George Nader

    e. One large black roller bag

    f. One large camo gray roller bag

    g. One large green roller bag

    h. One carry-on black roller bag

    i. One gray tote bag

    j. One gray leather satchel

21. The three identity documents and the Emirates boarding pass described above are currently in the custody of the FBI's Northern Virginia Resident Agency in Manassas, Virginia. All of the other items were subsequently turned over to NADER's legal counsel, Kathryn Ruemmler, who signed a form indicating she had taken custody of these items.

## SUMMARY OF PROBABLE CAUSE

22. In my training and experience, individuals' mobile devices may contain communications with their contacts, as well as video and other content exchanged between the individuals and their contacts. NADER has been convicted twice for child exploitation offenses. Given NADER's demonstrated sexual interest in children and his recent communications with a person who shares that interest, there is probable cause to believe that information contained with the items(s) described in Attachment A may contain evidence of child pornography or communications related to child exploitation offenses.

Ted P. Delacourt
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me this 14th day of June, 2019.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

Honorable Theresa C. Buchanan
United States Magistrate Judge

## ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

This warrant applies to digital mobile devices seized from NADER on June 3, 2019 (hereinafter, "SUBJECT PHONES"), specifically:

   a. iPhone SE Model A1662 with IMEI 353793083094157

   b. iPhone X Model MQAG2AE/A with serial number DNPVK3U3JCL9

   c. iPhone Model MGCU2LL/A with serial number F2LNK2F7G5QL

   d. Huawei phone Model LYA-L29

The SUBJECT PHONES are currently in the custody of the Federal Bureau of Investigation at its Northern Virginia Resident Agency, 9325 Discovery Boulevard, Manassas, Virginia 20109.

1

## ATTACHMENT B

## ITEMS TO BE SEIZED

All information that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 2252 and 2252A including information pertaining to the following matters:

    a.    Child pornography and child erotica;

    b.    Evidence of who transported, uploaded, downloaded, created, modified, deleted, accessed, possessed, viewed, owned, controlled, shared, or otherwise used the SUBJECT PHONES;

    c.    Evidence of when and under what circumstances the SUBJECT PHONES were transported, uploaded, downloaded, created, modified, deleted, accessed, possessed, viewed, owned, controlled, shared, or otherwise used; and

    d.    Evidence relating to the mental state of those who may have transported, uploaded, downloaded, created, modified, deleted, accessed, possessed, viewed, owned, controlled, shared, or otherwise used the SUBJECT PHONES as it relates to the crimes under investigation.